1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                              **DISTRICT OF NEVADA**

8

9    SCOTSMAN DEVELOPMENT                         3:06-CV-00553-BES-VPC
     CORPORATION, a Nevada corporation,
10   and NEVADA NORTHWEST, LLC, a
     Nevada limited liability company,            **ORDER**
11
                      Plaintiffs,
12
     v.
13
     DOUGLAS COUNTY, a political subdivision
14   of the State of Nevada; DANIEL HOLLER,
     Douglas County Manager, in his official and
15   individual capacity; MITCHELL DION,
     Douglas County Community Development
16   director and designated Douglas County
     Flood Plain Administrator, in his official and
17   individual capacity; CARL RUSCHMEYER,
     Douglas County Engineer, in his official and
18   individual capacity; and CATHE POOL,
     Douglas County Assistant Engineer, in her
19   official and individual capacity; and DOES 1
     through 50, inclusive,
20
                      Defendants.
21   _____

22          Presently before the Court is Plaintiffs Scotsman Development Corporation and Nevada

23   Northwest's (collectively "Nevada Northwest/Scotsman") Motion for Partial Summary Judgment

24   Enjoining Enforcement of Douglas County Ordinance as Unconstitutional (#26), filed on July

25   16, 2007.  Defendants Douglas County, Holler, Dion, Ruschmeyer, and Pool (collectively

26   "Douglas County" or the "County") filed their Opposition to Motion for Partial Summary

27   Judgment Enjoining Enforcement of Douglas County Ordinance as Unconstitutional (#62) on

28   September 19, 2007.  Nevada Northwest/Scotsman filed its Reply to Opposition to Motion for

                                            1

1 Partial Summary Judgment Enjoining Enforcement of Douglas County Ordinance as
2 Unconstitutional (#65) on October 24, 2007.

3                                    **I. BACKGROUND**

4        This case arises out of the administration of the Douglas County flood plain ordinance.
5 The Douglas County flood plain ordinance was enacted so that Douglas County (the "County")
6 could qualify for the National Flood Insurance Program ("NFIP").  The NFIP is the product of
7 the National Flood Insurance Act of 1968 (the "Act"),  42 U.S.C. §§ 4001-4129.  The NFIP is
8 operated by the Federal Emergency Management Agency ("FEMA") and provides subsidized
9 flood insurance to local communities.  Id. §§ 4011-12.  In order to participate in the program,
10 local communities must adopt flood plain management ordinances consistent with the
11 minimum requirements the Act.  Id. § 4012(c)(2); 44 C.F.R. § 59.2(b).

12        Under the NFIP, FEMA is authorized to create flood insurance rate maps ("FIRM").  A
13 FIRM is defined as "an official map of a community, on which the Adminsitrator has delineated
14 both the special hazard areas and the risk premium zones applicable to the community."  44
15 C.F.R. § 59.1.  "Flood insurance maps are used approximately 15 million times each year for
16 developing State and community flood plain management regulations, for calculating flood
17 insurance premiums, and for determining whether property owners must obtain flood
18 insurance as a condition to receiving mortgage loans or other financial assistance."  Nat'l
19 Wildlife Fed'n v. FEMA, 345 F. Supp. 2d 1151, 1164 (W.D. Wa. 2004) (citations omitted).

20        44 C.F.R. § 60.3(c)(10) requires that if notice of final flood elevations for the special
21 flood hazard areas have been issued, but a regulatory floodway has not been identified, "no
22 new construction . . . or other development (including fill) shall be permitted within Zones A1-
23 30 and AE on the community's FIRM, unless it is demonstrated that the cumulative effect of
24 the proposed development, when combined with all other existing and anticipated
25 development, will not increase the water surface elevation of the base flood more than one
26 ///
27 ///
28 ///

1   foot at any point within the community."[1] [2]  If a community proposes to allow an encroachment

2   on the flood plain which will increase the water surface elevation of base flood beyond one foot

3   at any point in the community, "the community shall apply to the Administrator for conditional

4   approval of such action prior to permitting the encroachments to occur."  Id. § 65.12(a).

5   Alternatively, the community may require a private entity to make the application.

6   　　　　If the map revisions are conditionally approved, FEMA issues a conditional letter of map

7   revision ("CLOMR").  After receiving the CLOMR, the community must provide evidence of the

8   adoption of flood plain management ordinances accounting for the change in base flood

9   elevations.  Id. § 65.12(b).  Once the encroachments have been completed, FEMA issues a

10  final map revision in the form of a letter of map revision (LOMR).  Id. § 65.12(c).  All CLOMR

11  applications must include the following:

12  　　　　　　1. Completed application forms.
　　　　　　2. Narrative on project and submittal (optional but very helpful).  Knowing the
13  　　　　　　project and purpose of the request better insures the needs of the requester are
　　　　　　met.
14  　　　　　　3. Hydrologic Computations (if applicable) along with digital files of computer
　　　　　　models used.
15  　　　　　　4. Hydraulic Computations (if applicable) along with digital files of computer
　　　　　　models used.
16  　　　　　　5. Certified topographic map with flood plain and floodway (if applicable)
　　　　　　delineations.
17  　　　　　　6. Annotated FEMA FIRM and/or FBFM to reflect changes due to project.
　　　　　　7. Items required to satisfy any FEMA NFIP regulatory requirements.  (Pool Aff.
18  　　　　　　Ex. 2.)[3]

19

20  　　　　Before submitting an application for a CLOMR, the community official responsible for

21  flood plain management must certify the application.  (Pool Off. Ex. 2.)  The certification

22  instruction states:

23  　　　　　　As the community official responsible for flood plain management, I hereby
　　　　　　acknowledge that we have received and reviewed this Letter of Map Revision

24  _____

25  　　[1]"Water surface elevation means the height, in relation to the National Geodetic Vertical Datum
(NGVD) of 1929, (or other datum, where specified) of floods of various magnitudes and frequencies in
26  the flood plains of coastal or riverine areas."  44 C.F.R. § 59.1

27  　　[2]"Base flood means the flood having a one percent chance of being equaled or exceeded in any
given year."  Id.

28  　　[3]The Pool Affidavit is attached as Exhibit A to Douglas County's Opposition (#62).

3

1
2
3
4

(LOMR) or Conditional LOMR request.  Upon the community's review, we find the completed or proposed project meets or is designed to meet all of the community flood plain management requirements, including the requirement that no fill be placed in a regulatory flood way, and that all necessary federal, state and local permits have been or in the case of a conditional LOMR, will be obtained.[4]

5
6
7
8
9
10
11
12
13
14
15

Douglas County's flood plain ordinance is codified at Chapter 20.50 of the Douglas County code.  The ordinance applies to all properties in a special flood hazard zone.  Id. Ch. 20.50.060.  The ordinance requires a permit "for all construction and other development to be undertaken in areas of special flood hazard."  Id. Ch. 20.50.90.  As part of the permit application, the ordinance states, "In certain circumstances the administrator will require a technical analysis, by a professional engineer licensed in the state of Nevada, showing that the proposed development located in the special flood hazard area will not cause physical damage to any other property."  Id. Ch. 20.50.100(8).  It further states, "When required by the administrator, the applicant shall be required to apply to FEMA for a conditional letter of map revision (CLOMR) and subsequent letter of map revision (LOMR) in order that a finding can be made regarding the impacts from proposed developments."  Id. Ch. 20.50.100(11).

16
17
18
19
20
21
22
23
24
25

On November 7, 2002, the Douglas County Board of Commissioners approved a planned development ("PD") overlay zone for 75.12 acres in the Nevada Northwest Specific Plan Area.  (Mot. Partial Summ. J. (#26) Ex. F p.1.)  A portion of the overlay is in a FEMA designated special flood hazard area in Martin Slough.  (Poole Aff. ¶ 4.)   The approval included the establishment of overlay zoning districts for public facilities, mixed use commercial, neighborhood commercial, multi-family residential, and single-family residential.  Id. Ex. F p.1.  The county conditioned the approval on the completion of a flood plain development application pursuant to Douglas County Code Chapter 20.50.  Specifically, the approval required Nevada Northwest/Scotsman[5] to acquire a CLOMR and LOMR from FEMA.  Id. Ex. F p.2.

26
27

[4]Both sides have quoted the above language, but neither has cited to the actual certification in the record.  (Mot. Summ. J. (#26) 8); (Opp'n (#62) 5.)

28

[5]Nevada Northwest is the owner of the property.  (Am. Compl. (#21) ¶ 6.)  Scotsman is the developer.  Id. ¶ 5.

4

1        Following approval of the development overlay, Nevada Northwest/Scotsman applied

2   for a Site Improvement Permit ("SIP") for the placement of fill on a commercial site in the

3   Nevada Northwest Specific Plan. Id. Ex. J p. 1. Like the PD approval, the SIP requires the

4   submission of a final application for a CLOMR before Nevada Northwest/Scotsman can place

5   additional fill on the portion of the site in the special flood hazard area. Id.

6        On May 19, 2006, Nevada Northwest submitted the CLOMR application to the County.

7   (Opp'n (#62) Ex. 11.) Thereafter, Mark Dion, the Douglas County Flood Plain Administrator,

8   contracted with Mark Forest, an engineering consultant, to advise him as to whether the

9   CLOMR application met FEMA and Douglas County regulations. (Opp'n (#62) Ex. 15.) Forest

10  found that the application was not complete and that there were technical shortcomings. (Mot.

11  Partial Summ. J. (#26) R.) He therefore recommended that Dion refuse to sign the

12  certification acknowledging that the project is designed to meet all the community flood plain

13  management requirements. Id. Dion refused to sign the certification and likewise refused to

14  pass the application along to FEMA and Nevada Northwest/Scotsman's application for an SIP

15  was rejected. Nevada Northwest/Scotsman then initiated this action, seeking relief from the

16  refusal of the county to issue a site improvement permit. (Am. Compl. (#21).)

17                                   **II. LEGAL STANDARD**

18       Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers

19  to interrogatories, and admissions on file, together with the affidavits, if any, show that there

20  is no genuine issue as to any material fact and that the moving party is entitled to judgment

21  as a matter of law." Fed. R. Civ. P. 56(c). The burden of demonstrating the absence of a

22  genuine issue of material fact lies with the moving party, and for this purpose, the material

23  lodged by the moving party must be viewed in the light most favorable to the nonmoving party.

24  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141

25  F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the

26  litigation and requires a trial to resolve the differing versions of the truth. Lynn v. Sheet Metal

27  Workers Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986); S.E.C. v. Seaboard Corp., 677 F.2d

28  1301, 1306 (9th Cir. 1982).

1    If the moving party presents evidence that would call for judgment as a matter of law

2  at trial if left uncontroverted, then the respondent must show by specific facts the existence

3  of a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

4  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party

5  for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not

6  significantly probative, summary judgment may be granted." Id. at 243-50 (citations omitted).

7  "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences

8  of which the evidence is reasonably susceptible; it may not resort to speculation."  British

9  Airways Board v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978); see also Daubert v. Merrell

10 Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993) ("[I]n the event the trial court concludes

11 that the scintilla of evidence presented supporting a position is insufficient to allow a

12 reasonable juror to conclude that the position more likely than not is true, the court remains

13 free . . . to grant summary judgment.").  Moreover, "[i]f the factual context makes the non-

14 moving party's claim of a disputed fact implausible, then that party must come forward with

15 more persuasive evidence than otherwise would be necessary to show there is a genuine

16 issue for trial." Blue Ridge Insurance Co. v. Stanewich, 142 F.3d 1145, 1143 (9th Cir. 1998)

17 (citing Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466,

18 1468 (9th Cir. 1987)).  Conclusory allegations that are unsupported by factual data cannot

19 defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

20                              **III. DISCUSSION**

21    According to Nevada Northwest/Scotsman, the Douglas County flood plain ordinance

22 is facially unconstitutional.  (Mot. Partial Summ. J. (#26) 43-50.)  Specifically, Nevada

23 Northwest/Scotsman contends that the ordinance is vague, uncertain, and fails to establish

24 reasonably ascertainable standards to determine whether compliance can be accomplished.

25 Id.

26    Both sides agree that the case of Union Pacific R. Co. v. City of Las Vegas, 747 F.

27 Supp. 1402 (D. Nev. 1989) sets out the appropriate legal standard.  (Mot. Summ. J. (#26) 46);

28 (Opp'n (#62) 10.)  There, the court held that a Las Vegas hazardous waste ordinance was

6

1 unconstitutional because it "fail[ed] to establish any reasonably ascertainable standards to

2 determine whether compliance can be accomplished, contrary to the due process clause of

3 the Fourteenth Amendment to the United States Constitutions."  In that case, the court held

4 that a hazardous waste transportation ordinance gave the Las Vegas Department of Fire

5 Services "unfettered discretion to impede or prevent hazardous material shipments before and

6 after a permit is issued."  Id.

7    As previously stated, the Douglas County flood plain ordinance states in relevant part:

8    8. In certain circumstances the administrator will require a technical analysis, by
a professional engineer licensed in the state of Nevada, showing that the

9    proposed development located in the special flood hazard area will not cause
physical damage to any other property.

10

          . . .

11

12    11. When required by the administrator, the applicant shall be required to
apply to FEMA for a conditional letter of map revision (CLOMR) and

13    subsequent letter of map revision (LOMR) in order that a finding can be made
regarding the impacts from the proposed development.  Ch. 20.50.100(8),
(10).

14

15    These provisions grant unfettered discretion to the Douglas County flood plain

16 administrator to condition the issuance of a development permit on the completion of a

17 technical analysis and/or the application for a CLOMR.  They provide no guidance as to when

18 an applicant may be required to do so; thus, the circumstances under which a technical

19 analysis or CLOMR application will be required is wholly unclear.  As a result, the

20 administrator's authority to require a technical analysis or CLOMR application is

21 unconstrained, essentially allowing him or her to deny the permit for a failure to provide such

22 a study or application where he or she deems appropriate.  The applicant is thus left to guess

23 as to the requirements of the application.  The ordinance is therefore unconstitutional.

24    Douglas County attempts to avoid this result by arguing that if read as a whole, the

25 ordinance provides the requisite indication of the circumstances under which the administrator

26 may require a technical analysis or CLOMR application.  (Opp'n (#62) 11.)  Specifically, the

27 County suggests that the administrator may do so when in the interests of the life, safety, and

28 welfare of the community.  Id.

1      However, those terms are absent from the section of the ordinance that states the

2 requirements for an application.  As a result, they do not confer sufficient notice as to the

3 circumstances under which the administrator may require a technical analysis or CLOMR

4 application.

5      The County further argues that Chapter 20.50.120(H)(5), titled "Standards for

6 Construction," provides the necessary notice.  That section requires that as part of the

7 hydrologic and hydraulic analysis essential for a map application, an applicant must include

8 an analysis that demonstrates that the project will not increase the base flood elevation by

9 more than one foot anywhere in the community.  Id.  According to the County, this provision

10 guides the discretion of the administrator, allowing him or her to require such an analysis

11 where the base flood elevation may be increased by a foot or more.  Id.

12      However, again, that provision appears in a different section or the ordinance and thus

13 does not clearly bear on the requirements for the issuance of a development permit.

14 Moreover, while it may provide notice of one circumstance in which a technical analysis or

15 CLOMR may be required, it does not clearly define all such circumstances.

16      The County also contends that this case is distinguishable from Union Pacific because

17 here the CLOMR requirement was imposed by the Douglas Board of County Commissioners.

18 (Opp'n (#62) 11-12.)  In support of that position, the County cites to the PD approval.  Id. at

19 12.  Here, though, the CLOMR requirement complained of relates to the SIP permit.  (Reply

20 (#65) 3-4.)  And that requirement was imposed by the County at the staff level.  (Mot. Partial

21 Summ. J. (#26) Ex. J.)  Therefore, the County's argument is misplaced.  For the foregoing

22 reasons, there being no genuine issue of material fact as to the constitutionality of the Douglas

23 County flood plain ordinance, the Court grants Nevada Northwest/Scotsman's motion.

24 ///

25 ///

26 ///

27 ///

28 ///

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV. CONCLUSION**

Accordingly, IT IS ORDERED that Nevada Northwest/Scotsman's Motion for Partial Summary Judgment (#26) is GRANTED.

The Clerk shall enter judgment in favor of Nevada Northwest/Scotsman as to its third claim for relief.

DATED: This 24th day of March, 2008.

_____
UNITED STATES DISTRICT JUDGE

9